**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| POLYDYNE SOFTWARE INC. | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:14-CV-797-LY |
| | § | |
| CELESTICA INTERNATIONAL, INC., | § | |
| DEFENDANT. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss Fraud Claim, filed November 25, 2014 (Clerk's Dkt. No. 6); Plaintiff PolyDyne Software Inc.'s Response to Celestica International, Inc.'s Motion to Dismiss to Dismiss Fraud Claim, filed December 12, 2014 (Clerk's Dkt. No. 11); and Defendant's Reply in Support of Motion to Dismiss Fraud Claim, filed December 18, 2014 (Clerk's Dkt. No. 16).

The motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.[1]   After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned recommends the District Court **GRANT** the defendant's motion to dismiss (Clerk's Dkt. No. 6) and **ORDER** the plaintiff to file

---

[1] A career law clerk for the undersigned was formerly employed as an attorney at Norton Rose Fulbright US LLP, the firm representing defendant Celestica International, Inc. in this matter.  In the interest of transparency and ethical judicial conduct, that law clerk was screened from this matter and in no way contributed to the analysis or recommendation herein.

an amended Complaint as more fully set forth below.

I.    **BACKGROUND**

Plaintiff PolyDyne Software, Inc. ("PolyDyne") filed this trademark action on August 20, 2014, naming as defendant Celestica International Inc. ("Celestica").  PolyDyne is a software company that provides global strategic sourcing, product costing, and quoting software to a variety of companies and industries engaged in seeking bids to outsource or quote various goods and services.  (Compl. ¶ 1).

PolyDyne licenses a software product, "SupplyWin®," "a web-based application and portal used in connection with QuoteWin[®]," another software product licensed by PolyDyne that "provides intelligent quote management and [request for quotation ("RFQ")] processing solutions for customers."  (Compl. ¶ 9).  PolyDyne alleges its software and the processes PolyDyne uses to develop and customize its software are valuable trade secrets. (Compl. ¶ 10).  Before meeting with potential customers to discuss or disclose information relating to the software, PolyDyne requires the execution of confidentiality and non-disclosure agreements.   In the agreements, potential customers agree, among other things, that they will use the software and trade secrets only as expressly authorized by the license agreement.  (Compl. ¶ 11).

Celestica is an electronics manufacturing services company that supplies a wide variety of original equipment manufacturers.  (Compl. ¶ 13).  According to PolyDyne, Celestica and multiple companies have attempted and failed to build an RFQ quoting solution such as the one PolyDyne offers with the QuoteWin/SupplyWin software combination, but their attempts have failed.  (Compl. ¶ 12).  As a result, PolyDyne alleges, on May 1, 1998, Celestica licensed QuoteWin from PolyDyne. (Compl. ¶ 15).  The License Agreement prohibited Celestica from reverse engineering or otherwise

disassembling the software, and prohibited Celestica from copying any documentation accompanying the software.  (Compl. ¶ 16).

In 2002, Celestica requested that PolyDyne customize the QuoteWin client server software for its business.  (Compl. ¶ 18).  The parties entered into a Consulting Agreement that contemplated both parties would share confidential information and agreed to maintain the confidentiality of such information.  (Compl. ¶ 18).  Under the Consulting Agreement, PolyDyne retained ownership of the customized QuoteWin software, and the License Agreement was deemed to include any product developed under the Consulting Agreement.  (Compl. ¶ 18).  PolyDyne developed detailed specifications for the customization and how it would be accomplished, which PolyDyne shared with Celestica.  (Compl. ¶ 19).  PolyDyne then implemented the agreed upon customization and provided the documentation relating to the customization to Celestica.  (Compl. ¶ 19).

In 2004, PolyDyne released an upgrade to the QuoteWin software.  (Compl. ¶ 20).  Due to the upgrade, Celestica notified PolyDyne that it was discontinuing its Support Agreement[2] for QuoteWin because Celestica would be unable to install the upgraded software without paying for its custom work again in the upgraded software.  (Compl. ¶ 20).  Celestica continued to possess a license to use its existing version of QuoteWin and be bound by the License Agreement, but did not have the right to make any modifications to the code, copy rights, or external facing of the product.  (Compl. ¶ 20).

In 2008, Celestica approached PolyDyne wishing to explore an update to the QuoteWin software.  (Compl. ¶ 21).  The parties executed a Confidentiality Agreement that precluded Celestica

---

[2] PolyDyne does not define the "Support Agreement," but presumably it is to provide Celestica with technical support and maintenance of the QuoteWin software.

from disclosing or using PolyDyne's confidential information, but did not grant Celestica a license or otherwise permit Celestica to use any information provided by PolyDyne.  (Compl. ¶ 21). PolyDyne representatives met with executives from Celestica in Austin, Texas at PolyDyne's headquarters.  (Compl. ¶ 22).  PolyDyne and Celestica had a two-day workshop centered around Celestica obtaining better understanding of PolyDyne's product functionality and processes. (Compl. ¶ 22).  The Celestica executives allegedly sought extensive information regarding the functionality and customization of PolyDyne's software as well as the changes and updates to QuoteWin and its processes that had been made since the 2004 upgrades.  (Compl. ¶ 22).  PolyDyne and Celestica held several additional meetings over the following two years, during which Celestica allegedly requested many demonstrations of the QuoteWin and SupplyWin software and "screen shots" containing PolyDyne's methodology and pricing logic.  (Compl. ¶ 23).  In 2009, Celestica informed PolyDyne that it was not going to upgrade its QuoteWin software or acquire the right to use the SupplyWin portal, citing the high cost of support and maintenance of the software.  (Compl. ¶ 26).

PolyDyne discovered in 2014 that Celestica was using a portal product called the QuoteApp Supplier RFQ, which feeds data into Celestica's quoting software, QuoteApp.  (Compl. ¶ 27). According to PolyDyne, the QuoteApp Supplier RFQ portal feeds data into QuoteWin in the same manner that SupplyWin feeds data into QuoteWin.  (Compl. ¶ 28).  PolyDyne alleges that the process and functionality of QuoteApp Supplier RFQ are the confidential and proprietary information PolyDyne revealed to Celestica from 1998 to 2009.  (Compl. ¶ 28).  Accordingly, PolyDyne asserts causes of action against Celestica for misappropriation of trade secrets, breach of contract, quantum meruit, fraud, trademark infringement, and unfair competition, and requests permanent injunctive relief, damages, and the costs, interest, and fees associated with this suit.  Celestica now moves to

dismiss PolyDyne's fraud cause of action.

## II.   STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rather, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court has made clear that this plausibility standard is not a "probability requirement," but does impose a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "a court must accept as true all of the allegations contained in a complaint," that tenet is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes the veracity of the well-pleaded factual allegations and construes the facts alleged "in the light most favorable to the nonmoving party." *Doe v. Robertson*, 751 F.3d 383, 386–87 (5th Cir. 2014) (citations and internal quotation marks omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations "plausibly

5

give rise to an entitlement to relief." *Id.* If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting FED. R. CIV. P. 8(a)(2)).

## III.   ANALYSIS

By way of its motion, Celestica argues PolyDyne's fraud cause of action should be dismissed for failure to meet the pleading standards of: (1) Federal Rule of Civil Procedure 8(a)(2) because the Complaint merely suggests the possibility of misconduct; and (2) Rule 9(b) because the facts alleged do not meet the heightened pleading standard Rule 9(b) requires.

Pleading fraud as a cause of action requires pleading "with particularity." FED. R. CIV. P. 9(a). In Texas, the elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Fifth Circuit precedent interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

In the Complaint, PolyDyne makes several factual allegations relating to the fraud cause of action. PolyDyne alleges that Celestica made knowingly false representations "[p]rior to and after entering into the Confidentiality Agreement in 2008," upon which PolyDyne relied. (Compl. ¶¶ 49–52). Specifically, "Celestica's [executives'] representations, that [Celestica] wanted to explore the processes and functionality of the software to determine whether it would purchase the software, were false. Instead, Celestica wanted to explore and use PolyDyne's confidential information to develop Celestica's own quoting software and web-based portal—QuoteApp and QuoteApp Supplier RFQ." (Compl. ¶¶ 22, 51). PolyDyne further alleges Celestica made these representations with the intent to induce PolyDyne to give Celestica access to confidential and proprietary information about PolyDyne's products, which PolyDyne relied upon, causing PolyDyne injury. (Compl. ¶ 54).

Taken as true, the allegations are sufficient to satisfy the general pleading requirements of Rule 8(a).[3] *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (fraud requires knowing, false, material representation made with intent to induce and actual inducement of reliant party which causes injury). However, Rule 9(b) requires more specificity to survive a motion to dismiss. Although the allegations in the Complaint generally state the "what" requirement of pleading fraud, i.e., what false representations were made, it is not at all clear who made the false statements, the specifics of the statements, when the statements were made, where they were made, or whether they were made orally or in written form. *Dorsey*, 540 F.3d at 339 (summarizing Rule

---

[3] Celestica argues PolyDyne's Complaint fails to satisfy the requirements of Rule 8(a)(2) because PolyDyne's allegations of fraud "at best present only the 'mere possibility of misconduct' by Celestica." (Def. Mot. at 3) (quoting *Iqbal*, 556 U.S. at 679). However, accepted as true and viewed in the light most favorable to Celestica, the factual allegations satisfy each element of common law fraud.

9(b) as requiring the complaint to specify the "who, what, when, where, and how of the events at issue"). For example, PolyDyne's assertion that the representations occurred "[p]rior to and after entering into the Confidentiality Agreement in 2008" is an insufficient identification of "when" the representations occurred. (Compl. 49). *See McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 785 (E.D. Tex. 2006) (allegation that false representations occurred "[o]ver the course of several years" was insufficient). Further, the contention that Celestica's executives made false statements is an insufficient identification of "who" made the representations. *See id.* (allegation that "Mattel's representatives" made false representations was insufficient). Finally, PolyDyne does not indicate "where" the false representations were made. *See James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 447–78 (5th Cir. 2013) (affirming dismissal of fraud claim for failure to allege where and when statements were made or identify speaker who made fraudulent statements).

Nevertheless, in its response to the motion to dismiss, PolyDyne directs the undersigned to the Confidentiality Agreement between PolyDyne and Celestica, and suggests the particular Celestica executives "involved in the signing of the Confidentiality Agreement, among others" were responsible for making false representations. (Pltf. Resp. at 2–3, 5). PolyDyne also contends in its response to the motion to dismiss that "examples [of the specified time of the fraudulent representation] include during the two-day [workshop] meeting itself, during the 2008-2009 discussions, and also in 2009, when Celestica informed PolyDyne that it was no longer interested in PolyDyne's software." (Pltf. Resp. at 3). The undersigned cannot consider the cues provided by PolyDyne in its response to the motion to dismiss or the Confidentiality Agreement in conjunction with the Complaint. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (court may not look beyond face of pleadings to determine whether motion to dismiss should be granted). Without these

8

cues, the Complaint shows a lack of specificity regarding PolyDyne's fraud claim.

Accordingly, the undersigned finds PolyDyne has failed to meet its burden in pleading its fraud claim. *See, e.g., Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004) (allegation that defendant made false statements during "negotiations leading up to" an event for the purpose of inducing someone to enter into contract with him failed to allege particular time and place of false representations, as well as specific facts to support inference of fraud); *WMX Techs.*, 112 F.3d at 178–79 (allegations failing to identify place or time misrepresentations occurred insufficient to state claim of fraud); *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (rejecting as insufficient fraud allegations failing to identify particular person making representations, when they were made, where and by what means they were made, whether they were oral or written, exact content of representations, or why they were fraudulent). Celestica's motion to dismiss PolyDyne's fraud claim should therefore be granted.

In its response to the motion to dismiss, PolyDyne requested leave to amend the Complaint should the Court grant Celestica's motion. (Clerk's Dkt. No. 11 at 6–7). This is PolyDyne's first request for leave to amend the complaint, and it is possible that PolyDyne can cure the defects detailed above. PolyDyne therefore should be granted leave to amend the Complaint to plead fraud with greater specificity. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (court should not dismiss fraud claim for failure to plead with particularity without granting leave to amend unless defect is simply incurable or party has been afforded repeated opportunities to so plead).

## IV.   RECOMMENDATION

In sum, PolyDyne has failed to plead its fraud cause of action with the particularity required by Rule 9(b).  However, PolyDyne should be granted leave to amend the Complaint to remedy this defect.[4]

The undersigned accordingly **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss Fraud Claim (Clerk's Dkt. No. 6) and dismiss Plaintiff PolyDyne's fraud claim without prejudice.  The undersigned **FURTHER RECOMMENDS** Plaintiff PolyDyne be ordered to file an amended Complaint pleading fraud with greater particularity.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

---

[4] Pursuant to the scheduling order, the deadline to file amended pleadings is January 8, 2016.  (Clerk's Dkt. No. 24).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on July 13, 2015.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE